94 So.2d 402

TOWNS TRUCK LINES, Inc.,

v.

COTTON STATE EXPRESS, Inc., et al.

6 Div. 926.

Supreme Court of Alabama.

March 21, 1957.

Rehearing Denied April 25, 1957.

Maurice F. Bishop, Lange, Simpson, Robinson & Somerville, Ormond Somerville and Daniel J. Meador, Birmingham, for appellees.

D. H. Markstein, Jr., and John W. Cooper, Birmingham, for appellant.

GOODWYN, Justice.

This is a declaratory judgment suit brought by appellees (several Alabama motor carriers) in the circuit court of Jeffer-

son County, in equity, against appellant, Towns Truck Lines, Inc., seeking an interpretation of an order of the Alabama Public Service Commission granting to appellant certain operating rights. The trial court rendered a decree construing the order in accordance with appellees' insistence. Towns brings this appeal from that decree.

Involved here is certificate of public convenience and necessity number 633 issued to Towns on January 30, 1943. The provision with which we are concerned reads as follows:

"1. General commodities: between Birmingham, Ala. and points located within a radius of 10 miles from Birmingham on the one hand and Oneonta, Ala. and points located within a radius of 25 miles of Oneonta on the other hand via Alabama Highway No. 38."

As we see it, the determinative questions presented on this appeal are as follows:

I. Should the radii prescribed in the certificate be measured from (a) the centers of the designated cities, or (b) from the city limits of said cities, or (c) the outer limits of their police jurisdictions?

II. If a part of the police jurisdiction or city limits of another city lies within the prescribed radius, however it is measured, does Towns thereby have authority under the certificate to serve all of said city, including that part which lies beyond the prescribed radius?

The answers to these questions must come from ascertainment of the meaning of the phrase "within a radius of" as used in the certificate. The trial court, in rendering its decree, wrote an opinion which seems to us to be a clear statement of the case and which is in accord with our views. We quote the following from that opinion and adopt it as part of the opinion of this court:

"No oral testimony whatever has been heard. The evidence submitted has consisted entirely of documentary exhibits and stipulations of the parties. The several complainants appear to have a sufficient community of interest in the subject matter, as distinguished from questions purely of law and fact, to justify rendition, at their joint suit, of a declaratory decree in the premises, and there appears to be a bona fide justiciable controversy subsisting between such several complainants on the one hand and the respondent carrier on the other.

"The primary question is the interpretation of a portion of that certain certificate of Public Convenience and Necessity designated as No. 633, embraced within the report and order of the Alabama Public Commission dated January 30, 1943, under its docket number 8088, which certificate, as subsequently amended from time to time, is presently held by the respondent. The only portion in question reads as follows:

" 'It Is Therefore Ordered By The Commission, That Motor Carrier Certificate of Public Convenience and Necessity No. 633 be, and it is hereby issued to M. J. (Bob) Towns, doing business as Towns Truck Lines authorizing operation as a common carrier by motor vehicle in the transportation of certain commodities over regular and/or irregular routes under provisions of the Alabama Motor Carrier Act of 1939, between certain points and within a radius of miles as described in Appendix "A" attached hereto and made a part hereof.'

"Appendix 'A' incorporated within this order, insofar as is involved in the present controversy, reads as follows:

" 'Appendix "A"

" 'Commodities and Territory Over Which Same Shall Be Transported

" '1. General Commodities:

" 'Between Birmingham, Alabama and points located within a radius of

10 miles from Birmingham on the one hand and Oneonta, Alabama and points located within a radius of 25 miles of Oneonta on the other hand via Alabama Highway No. 38.'

\* \* \* \* \* \*

 "A certificate of public convenience and necessity such as the present one is a kind of public franchise, and the courts have held that such franchises are to be construed in favor of the public. This usually means that the construction is rather strict as against the recipient of the grant. The phrase 'within a radius of' has been variously interpreted by the appellate courts of other states in connection with construction of municipal ordinances, covenants restrictive of competition in employment contracts, etc. It may have been that, on the original 'grandfather' application, which resulted in the present certificate which has now come to be held by this respondent, the commission *might* have intended that the applicant be authorized to serve all points and places lying within a peripheral belt, ten miles in width, adjacently surrounding the corporate limits of the municipalities specifically named in the order granting the certificate. But the Court can only construe, it cannot reform, the certificate. Of interest, though not controlling, is the commission's order in Docket 13257 dated April 20, 1953, (Ex. 6) showing that it could find no general commodity authority between Gadsden and Birmingham under its certificate. Theretofore, it had apparently taken a contrary view by assuming, in its order of December 11, 1951, (Docket No. 11,-390) that the radius was to be measured from the police jurisdiction of Oneonta. But if such had been the intention, it would seem that the administrative body would have employed the phrase 'within a distance of', rather than utilizing the term 'radius', which has a well-known and precise geometrical meaning. These orders are made in the exercise of a quasijudicial power, and partake somewhat of the nature of a formal judgment rendered within the administrative expertise of the public agency. A greater degree of precision attends the terms employed than is present in contracts between individuals. 'Loose and metaphorical' meanings ought not to be attributed to such terms.

"Most dictionary definitions of the word 'radius', in the sense most appropriate here, carry the conception of 'a circular area or boundary'. Taking the situation of the city of Birmingham as example, an outward projection of its corporate limits for a uniform distance of ten miles would not result in even a roughly circular configuration. A glance at a large scale map of Birmingham reveals that its southwestern and northern boundaries contain sectors marked by frequent and deep irregularities, and readily suggests the uncertainty, confusion, and controversy which would probably ensue if the inward end of the 'radius' had to be fixed at some given point along such a boundary.

"If the term is used in its more exact sense, it would make it practically feasible for carriers and other parties interested to ascertain in most instances the territorial limits of authorization with fair accuracy by the use of a reliable highway map, a scale, and a draftsman's compass. If, on the other hand, the exact city limits are to be taken as fixing the inward endpoint of the radius, considerable engineering work would be necessary to establish the exterior boundaries of the peripheral belt. Considerations of clarity, definiteness, and practical ascertainability would seem to better comport with the interpretation of the term here adopted.

■ "In the court's opinion, the language used in this order is expressive of an intention to authorize service within, and only within, a circle having a diameter of twenty miles, in the case of the Birmingham area, and a circle having a diameter of fifty miles in the case of the Oneonta area, the center of each such circle to be found at the point which is the geographical center of each of said cities, ascertained by inward measurement from the corporate boundaries thereof as they existed at the date of the issuance of the certificate. But it would also seem to be a fair construction to say that, when service of a named municipality is authorized, it is contemplated that that city be served as a governmental, economic, and geographical unit, in its entirety, whether or not its boundary should expand, contract, or alter over a period of years subsequent to the grant of the certificate, and even though such boundary should come to exceed the circumference of the surrounding circle originally prescribed.

■ "However, it cannot be fairly said that it was contemplated that the outermost limits of large territorial authorizations should be susceptible of being thrust further outward and extended by the expansion of the municipal area or extensions of the police jurisdictions of the city lying at the hub thereof. Nor, in the Court's, opinion, should such large territorial authorities be construed to be subject to automatic increase because of the intersection of and intrusion into the circumference thereof by expansion of the municipal boundaries or police jurisdiction of cities originally lying wholly or mainly outside such circumferences. All such accretions would occur without regard to any factors of transportation significance, and tend to be productive of uncertainty and the chaotic competitive conditions

against which the Motor Carrier Act was, in part, aimed in the public interest.

■ "In this case, it appears that respondent's predecessor sought specific authority to serve the city of Gadsden, (see par. III B and C of Ex. A to grandfather application) and also sought a radial authority within twenty-five miles of the city of Oneonta (same paragraphs, and also map 'B–1(c)–(6)' attached to application.) Apparently, the radial terminal authority was granted without mention of the heavy industrial center of Gadsden, the size and importance of which city would seem to have made it appropriate for inclusion as a designated place, had the intention of the commission been to authorize service to and from that entire city, only a portion of which would be within an arc on the twenty-five mile radius, however measured. Gadsden was specifically authorized for transportation of ice. Also, Bessemer was specifically named additionally to Birmingham for other specific commodities, though lying within ten miles from the western boundary of Birmingham. Applicant's map graphically indicating the circle surrounding Oneonta, appears to exclude from it the cities of Gadsden, Guntersville, Boaz, and Albertville, entirely.

"The Court is, therefore, of the opinion that this certificate authorizes service without interchange only to and from such portion of the city of Gadsden as may actually lie within a radius of twenty-five miles from the geographical center of Oneonta. This harmonizes with federal construction of Interstate Commerce Commission certificates granting radial authority which 'cuts' only portions of outlying cities.

"The order appears to authorize either regular or irregular service, or both, over a fixed route between the Birmingham and Oneonta territorial

areas, such route being fixed and limited to the use of Alabama Highway No. 38, and that route, as thus designated at the time of the grant of the certificate, must be traversed by the respondent in operations between the two areas mentioned, insofar as possible. However, there is nothing in the order which would indicate that service is limited within either radial area to points and places lying on this particular highway. It is only required that it be substantially used as a route of connection between the two radial terminal areas.

\* \* \* \* \* \*

"It is, therefore, by the Court, Ordered, Adjudged, Decreed and Declared As follows:

\* \* \* \* \* \*

"3. That by virtue of certificate of Public Convenience and Necessity No. 633, as last amended by order of the Commission dated May 11, 1954, in docket No. 13611, the respondent Towns Truck Lines, Inc., a corporation, is authorized to serve all points and places within the police jurisdictions of the cities of Birmingham and Oneonta, under the general commodities portion of said certificate, irrespective of whether or not such points or places lie without the radial territories hereinafter defined.

\* \* \* \* \* \*

"5. That the twenty-five mile radius aforesaid is to be based upon air miles, or straight line distances, as measured from the geographical center of the city of Oneonta, as ascertained from its corporate limits existing on the 30th day of January, 1943.

"6. That the ten mile radius aforesaid is to be based on air miles, or straight line distances, measured from the geographical center of the city of Birmingham, ascertained from its corporate limits as they existed on the 30th day of January, 1943.

"7. That respondent, under the general commodities section of such certificate, can serve only those points actually within a twenty-five mile radius of Oneonta measured as hereinabove prescribed, insofar as the Oneonta area is concerned, and should such twenty-five mile radius as thus measured intersect the police jurisdiction, city limits, or part of another city or town, lying partly within and partly without the circle described upon such radius, only those portions or parts of such city or town as are actually within an arc measured upon such radius can be served by the respondent in the transportation of general commodities, without interchange."

Supporting the holding that the prescribed radii are to be measured from the respective centers of the designated municipalities, are the following: Mead v. Anton, 33 Wash.2d 741, 207 P.2d 227, 10 A.L.R.2d 588; Cook v. Johnson, 47 Conn. 175, 36 Am.Rep. 64; Skolnick v. Orth, 84 Misc. 71, 145 N.Y.S. 961; Silverman v. Brody, Sup., 65 N.Y.S.2d 803. As supportive of appellant's position, see Saltman v. Smith, 313 Mass. 135, 46 N.E.2d 550.

Supporting the holding that certificate number 633 authorizes appellant to serve "only those points actually within" the prescribed radii and "only those portions or parts of such city or town as are actually within an arc measured upon" the prescribed radii, are the following: McCue v. Elsholtz, 51 M.C.C. 794, 799; Transportation Activities of Tornetta, 48 M.C.C. 637, 641.

In Mead v. Anton, supra [33 Wash.2d 741, 207 P.2d 228], a bill of sale of a restaurant business provided that the respondents (vendors) should not enter into competition with the complainants "within a radius of five hundred (500) yards of the present location of the Perkins Building." An assignment of the lease defined the distance as "within a radius of Five Hundred Yards from the existing restaurant". The court held that the starting point of the radius

to be drawn should be located either at the center of the building in which the restaurant sold was located or in the center of the restaurant itself. It was found unnecessary to determine which of these positions should be taken inasmuch as the restricted business was within the prohibited area if measured from the center of either.

In Cook v. Johnson, supra, the contract of sale of the defendant's dental practice provided that the vendor should not practice dentistry within a radius of ten miles of the town of Litchfield. This was construed as excluding the practice of dentistry by the vendor within ten miles in every direction from the center of the town, and not within ten miles from the town's extreme boundaries.

In Skolnick v. Orth, supra, and Silverman v. Brody, supra [65 N.Y.S.2d 804], the word "radius", as used in a restrictive covenant, was construed "to mean a straight line drawn from the center to the circumference of a circle and when applied to the limitation of space it means the territory within a circle having all points equally distant in all directions."

Webster's New International Dictionary, 2d Ed., pp. 2052–2053, includes the following in the definition of "radius":

"A right line extending from the center of a circle or sphere to the curve or surface; the semidiameter of a circle or sphere."

In Transportation Activities of Tornetta, supra, the carrier's territorial authority included "all points within ten miles of Norristown and Newark, respectively". In construing this provision the Interstate Commerce Commission had this to say:

"In our opinion, the description of the territory in the certificates held by these carriers, though possibly illogical insofar as it splits cities, streets, and residential areas, is, nevertheless, clear and definite so that it leaves no doubt as to the extent of the authority granted. When a city, town, or other incorporated municipality is traversed by the boundary line of a territorial grant of authority, only that part of the city, town, or other incorporated municipality may be served. Whatever illogic there is in this result is cured by the fact that generally the radial distances were chosen with such liberality as to allow everything which had been justified. If it had been intended to authorize each of these carriers to serve all or any portion of any city, town, or incorporated municipality beyond the boundary of the definite territorial grant, some other language would have been employed."

It should be noted that Towns' territorial authority is between the designated municipalities and "points" within prescribed radii. It seems to us that this designation excludes the idea of authorizing Towns to go beyond the actual terminal point of each authorized radius. Had it been intended to extend authority beyond the actual terminal points of the radii it would have been a simple matter to have so provided. We do not think it can reasonably be said that the authority given under certificate number 633 gives to Towns the right to serve the whole of a municipality when a radial line merely crosses the city limits of a municipality and does not reach all points therein. It is only that part of a municipality within the arc described by one of the authorized radii which may be served by Towns under certificate number 633.

The decree appealed from is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.